**In the Interest of G.D., a Minor**

**v.**

**Appeal of: D.D.**

**In the Interest of G.D., a Minor**

**v.**

**Appeal of: D.D.**

Superior Court of Pennsylvania.

Argued Dec. 4, 2012.

Filed Feb. 15, 2013.

---

D.D., appellant, pro se.

BEFORE: BOWES, OLSON, and WECHT, JJ.

**OPINION BY OLSON, J.:**

Appellant D.D. ("Aunt"), the maternal great-aunt of the subject minor child, G.D. ("Child"), appeals, *pro se*, from the order dated and entered on June 29, 2012, in which the trial court denied her emergency motion to intervene in the dependency proceedings commenced by the Berks County Children and Youth Services, ("BCCYS" or the "Agency").[1,2] We affirm.

In its opinion, the trial court sets forth the factual background and procedural history of this appeal as follows.

The minor child was declared dependent by order of [the trial court] dated June 8, 2011, following an adjudicatory and dispositional hearing. On that same date, [BCCYS] placed [the] minor child in the care of A.D. and D.D., husband and wife, the minor child's maternal great[-]uncle and aunt. A.D. and D.D. were granted a temporary foster care license at this time. BCCYS filed a MOTION FOR PLACEMENT WITH KINSHIP CAREGIVER NOT LICENSED WITHIN 60 DAYS on July 29, 2011. In that motion, BCCYS re-

1. Aunt's *pro se* motion to intervene was captioned, "Emergency Motion to Terminate Dependency and Return Child Back to Maternal Great Aunt." *See* Rules of Juvenile Court, Rule 1133.

2. Aunt also filed a *pro se* appeal at No. 1368 MDA 2012. By order filed on August 21, 2012, we consolidated Aunt's appeal at No. 1368 MDA 2012 under the appeal filed at No. 1367 MDA 2012. Order, 8/21/12. At No. 1368 MDA 2012, Aunt appealed from an order entered on June 27, 2012 in the Berks County Orphans' Court that denied, without prejudice, Aunt's motion to intervene in proceedings pending before the Orphans' Court with respect to Child. At the time Aunt moved to intervene before the Orphans' Court, the only proceedings pending before that court which involved Child were petitions to terminate the rights of Child's parents. Accordingly, the Orphans' Court denied Aunt's motion on grounds that she lacked

standing. The order denying Aunt's motion without prejudice permits Aunt to reinstate her motion if adoption proceedings are commenced. Statement of Reasons for Entry of June 27, 2012 Order, 8/24/12, at 1–2 (noting that Aunt preserved her right to participate in adoption proceedings relating to Child by filing report of intent to adopt).

Before this Court, Aunt's description of the order in question, her statement of the questions involved, and the substantive contentions set forth in the argument section of Aunt's brief all refer and relate to the June 29, 2012 order issued by the Berks County Juvenile Court that denied Aunt's emergency motion to intervene in the dependency proceedings initiated by BCCYS. Because Aunt has not developed any challenge to the June 27, 2012 order entered by the Orphans' Court, we hold that Aunt has waived any such claim and, therefore, affirm that order without further discussion.

quested that the [trial court] approve placement with A.D. and D.D. pending the licensing of their home under 55 Pa.Code § 3700.70(a). The [trial court] granted BCCYS' motion on August 1, 2011.

Minor child remained in A.D. and D.D.'s home until January 2012. On January 10, 2012, BCCYS petitioned the [trial court] to modify the minor child's placement. A STIPULATION FOR MODIFICATION OF PLACEMENT was filed on this date. BCCYS, the child's Guardian Ad Litem, child's mother ["Mother"], and Mother's attorney all agreed that the minor child would be removed from the home of A.D. and D.D.[,] and placed in a new foster home based on the failure of A.D. and D.D. to obtain the necessary foster care license. [The trial court] granted BCCYS' motion to modify the minor child's placement by order dated January 11, 2012.

Mother, through her attorney, filed a MOTION FOR PLACEMENT WITH KINSHIP CAREGIVER NOT LICENSED WITHIN SIXTY DAYS on January 30, 2012. In that motion, Mother requested that the minor child be returned to the care of A.D. and D.D. pending their appeal of the denial of their foster care license. In the alternative, Mother requested that the minor child be placed in the care of G.D. and C.D., husband and wife, pending the approval of their foster care license. G.D. and C.D. are also the minor child's maternal great[-]uncle and aunt.

On February 3, 2012, BCCYS filed a related motion, titled MOTION FOR DETERMINATION OF MOST APPROPRIATE PLACEMENT. In that motion, BCCYS detailed its concerns relating to returning the child to the care [of] A.D. and D.D.[,] and also acknowledged that G.D. and C.D. had presented themselves as a potential kinship foster home for the minor child. An evidentiary hearing was held on February 15, 2012, at which A.D. and D.D.[,] as well as G.D. and C.D.[,] appeared and were represented by counsel. On February 21, 2012, the minor child's placement was modified by order of [the trial court]. The minor child was placed in the care of G.D. and C.D.

On March 28, 2012, Mother, through her attorney, filed a MOTION FOR DETERMINATION OF MOST APPROPRIATE PLACEMENT. In that motion, Mother again requested that the minor child be returned to the care of A.D. and D.D. In support of that requested [sic], Mother averred that A.D. and D.D.'s appeal of the denial of their foster care license had been substantiated in February 2012[,] and A.D. and D.D. wanted to again become a resource for the minor child. The [trial court] held another evidentiary hearing on May 2, 2012, to address Mother's motion. The [trial court] denied Mother's motion on May 4, 2012, based on the [trial court's] belief that the child's current placement with G.D. and C.D. is most appropriate.

D.D. filed a *pro se* EMERGENCY MOTION TO TERMINATE DEPENDENCY AND RETURN CHILD BACK TO MATERNAL GREAT AUNT (hereinafter "Emergency Motion") on June 15, 2012. [The trial court] entered an order on June 18, 2012, directing BCCYS to file an answer showing cause as to why D.D.'s motion should not be granted within twenty (20) days. BCCYS filed its answer, titled an ANSWER OF BERKS COUNTY CHILDREN AND YOUTH SERVICES TO EMERGENCY MOTION TO TERMINATE DEPENDENCY AND RETURN CHILD BACK TO MATERNAL GREAT AUNT on June

26, 2012. Based upon a review of D.D.'s motion and BCCYS' response, [the trial court] denied D.D.'s Emergency Motion on June 29, 2012.

Trial Court Opinion, 8/14/12, at 1–3 (block capitalization in original).

On July 27, 2012, Aunt timely filed an appeal from the order entered on June 29, 2012, along with a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

■■■■ In her brief on appeal from the dismissal of her motion, Aunt raises the following issues.

1. Did the [t]rial [c]ourt err and abuse its discretion when it denied the Petitioner[']s *Emergency Motion to Terminate Dependency and Return Child back to Maternal Great[-]Aunt* without a hearing of all evidence and based solely on Berks County Children and Youth Service's [sic] response in the *Answer of Berks County Children and Youth Services to Emergency Motion To terminate [sic] Dependency and Return Child Back to Maternal Great[-]Aunt* [?]

2. Did the [t]rial [c]ourt err and abuse its discretion by not questioning the validity of the Berks County Children and Youth Service's [sic] statements in the Response Answer of Berks County Children and Youth Services to *Emergency Motion To Terminate Dependency and Return Child Back to Maternal Great[-]Aunt* [?][sic]

3. Did the [t]rial [c]ourt err and abuse its discretion by allowing Berks County Children and Youth Services twenty days to answer the Petitioner's response in the *Answer of Berks County Children and Youth Services to Emergency Motion To Terminate Dependency and Return Child Back to Maternal Great[-]Aunt* [?]

4. Did the [t]rial [c]ourt err and abuse its discretion in not acknowledging Appellant's "Standing" of *Loco parentis* to the minor child in question?

5. Did the [t]rial [c]ourt err and abuse its discretion in not acknowledging that the Petitioner and her husband, A.D., were approved licensed kinship/foster parents for the minor child, by Berks County Children and Youth Service[s], on February 15, 2012[,] the same day minor [sic][?]

6. Did the trial court err and abuse its discretion when it did not recognize that Appellant filed her "Intent to Adopt" in a timely manner[?]

7. Did the trial court err and abuse its discretion when it failed to hold a fair hearing regarding the several motions for "Most Appropriate Home" filed[?]

8. Did the trial court err and abuse its discretion when it did not give [A]ppellant the opportunity to refute BCCYS's answers to her petition[?]

9. Did the trial court err and abuse its discretion when it did not recognize that [A]ppellant was a party to the proceedings[?]

10. Did the trial court err and abuse its discretion when it when it [sic] did not consider the child's best interest[?]

11. Did the trial court err and abuse its discretion when it did not consider the fact that Appellant had completed most of the requirements for her kinship/foster care license[?]

12. Did the trial court err and abuse its discretion when it when it [sic] did not acknowledge the rules of the Adoption and Child Welfare Act of 1980 which requires Children and Youth Agencies offer a full range of services to prevent children from being removed from their homes[?]

13. When it stated the three classes that have standing in dependency, yet

ignored D.D. The [t]rial [c]ourt judge should have recognized that D.D. was a person who fits one of these classes. [sic][?]

Aunt's Brief, at 6–7.[3]

Our Supreme Court set forth our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010).

■ The trial court first addressed Aunt's fourth issue, *i.e.*, whether the trial court erred and abused its discretion in not acknowledging Aunt's *in loco parentis* standing as to Child in denying her motion to intervene.[4] An issue regarding standing to participate in dependency proceedings is a question of law warranting plena-

ry review, and our standard of review is *de novo*. *In re J.S.*, 980 A.2d 117, 120 (Pa.Super.2009) (*citing In re L.C., II*, 900 A.2d 378, 380–81 (Pa.Super.2006)).

With regard to standing, section 6336.1 of the Juvenile Act provides as follows:

### § 6336.1. Notice and hearing

**(a) General rule.**—The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal

---

**3.** We note that Aunt's Statement of Questions Involved in her brief includes issues that she did not raise in her Concise Statement of Errors Complained of on Appeal. Thus, we find that she waived any challenges that were not raised in the Concise Statement. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa.Super.2006), in which we stated, "[w]e will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, Pa.R.A.P. 2116(a), and any issue not raised in a statement of matters complained of on appeal is deemed waived." *See also Dietrich v. Dietrich*, 923 A.2d 461, 463 (Pa.Super.2007) (stating that issues not raised in Rule 1925(b) statement are waived on appeal). We find that Aunt waived her twelfth issue in her Statement of Questions Involved regarding the trial court's failure to consider the "Adoption and Child Welfare Act of 1980" in this matter. We find that the remaining issues in Aunt's Statement of Questions Involved are subsumed in issues that she properly preserved, and we will address them. We note, however, that Aunt's *pro se* status does not cause this Court to act as her attorney. *See Smathers v. Smathers*, 448 Pa.Super. 162, 670 A.2d 1159, 1160 (1996) (stating that *pro se* status does not relieve an appellant of her duty to properly raise and develop her appealable claims).

**4.** We could find that Aunt waived her ninth and thirteenth issues in her Statement of Questions Involved in her brief by her failure to raise these issues in her Concise Statement of Errors Complained of on Appeal. *See Krebs v. United Refining Co.*, 893 A.2d at 797. We will review these issues as part of our review of her fourth issue, however, as they are subsumed into that issue.

standing in the matter being heard by the court.

42 Pa.C.S.A. § 6336.1.

 "[T]he question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Silfies v. Webster*, 713 A.2d 639, 642 (Pa.Super.1998). "[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823, 824 (1996) (citations omitted). "Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary." *Robert Half Int'l, Inc. v. Marlton Techs., Inc.*, 902 A.2d 519, 524 (Pa.Super.2006) (citation omitted). "Questions of law are subject to a *de novo* standard of review." *Id.* (citation omitted).

The facts presently before us require careful examination of relevant case law regarding the standing rules under the Juvenile Act. In *In re L.C., II, supra*, the subject child had lived with his grandmother for the first fourteen years of his life, but legal and physical custody of the child was awarded to his mother when he was fifteen years old. The following year, the child was the subject of a juvenile delinquency petition for committing sexual offenses against a nine-year-old girl. He was adjudicated dependent, and placed under the custody of the county children and youth agency. The trial court denied the grandmother's petition to participate in the dependency hearing, reasoning that the grandmother did not have legal custody or *in loco parentis* status at the time of the child's alleged offense, and that the grandmother's care, custody, and control were not at issue in the dependency proceeding.

On appeal, this Court stated the following.

Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted. Dependency hearings are closed to the general public. 42 Pa.C.S.A. § 6336(d); *In re L.J.*, 456 Pa.Super. 685, 691 A.2d 520, 526 (1997). Only a "party" has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. 42 Pa.C.S.A. § 6338(a); *L.J., supra* (stating that a person who is not a party has no right to participate in a dependency proceeding). Although the Juvenile Act does not define a "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question. *In re J.P.*, 832 A.2d 492, 496 (Pa.Super.2003); *L.J., supra; In re Manuel*, 389 Pa.Super. 80, 566 A.2d 626, 628 (1989); [*In re Michael Y.*, 365 Pa.Super. 488, 530 A.2d 115, 118 (1987) ]. These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. 42 Pa.C.S.A. §§ 6351.[sic] Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings. *See Brooks–Gall v. Gall*, 840 A.2d 993, 997–98 (Pa.Super.2003).

*In re L.C., II*, 900 A.2d at 381.

This Court observed that section 6336.1 of the Juvenile Act, regarding standing, affords statutory standing to a foster par-

ent, pre-adoptive parent or relative providing care for the child who also has legal custody of the child under section 6357 of the Juvenile Act. *Id.* at 382. We noted that the Juvenile Act is silent with regard to the right to be heard or statutory standing for grandparents or relatives who, at some time in the past, served as a primary caregiver for the child. *Id.* We found that the grandmother was not the parent or the legal custodian of the juvenile whose dependency was at issue. This Court determined that the grandmother's care and control of the child were not in question, because, when the child committed the offenses that led to the dependency petition, he was in the legal and physical custody of his mother. Thus, we affirmed the trial court's decision that the grandmother did not have standing. This Court instructed that the decision did not mean that the grandmother could not seek custody of the child in the future. We observed that the trial court allowed the grandmother to be present at the adjudication hearing, and noted that the record suggested the court would continue to provide her with notice of the proceedings, but that it properly denied her standing as a party in the dependency proceedings. *Id.* at 382–83.

In *In re D.S.,* 979 A.2d 901 (Pa.Super.2009), the two subject children were living with their mother at the time of their dependency adjudication in Nevada. As a result of the dependency adjudication, the children were placed with their grandmother and step-grandfather in Pennsylvania. The child services agency in Pennsylvania assumed supervisory status over the placement of the dependent children. Upon investigation, the trial court discovered that the step-grandfather had a previous conviction for aggravated assault; therefore, the court disqualified the grandmother as a foster parent. At that time, the children were removed from the grandmother's home and placed in another

foster home. The grandmother gained weekly, unsupervised visitation, and the children were moved to the home of a maternal cousin. The grandmother then sought standing to participate in the dependency proceedings. The trial court determined that she did not have standing.

On appeal, this Court found that the trial court properly determined that the dependency adjudication had been initiated because of the inability of the children's mother to care for the children, and that the grandmother was not the caretaker of the children, but, rather, a placement resource after the dependency adjudication. Further, we found that the trial court properly determined that the grandmother's care and control of the children was not at issue, that the grandmother did not have legal custody of the children, and that she did not have standing in the proceedings by virtue of her status as a grandparent. Relying on *In re L.C., II,* 900 A.2d at 382–83, we stated that the trial court properly deferred custody and family placement decisions, and noted that the trial court had not held that the grandmother lacked standing to seek custody of the children at a later time. *In re D.S.,* 979 A.2d at 905.

In *In re D.K.,* 922 A.2d 929 (Pa.Super.2007), the appellant was not the biological father of the two subject children, but he had cared for them for most of their lives. The agency removed the children from the home of the appellant based on lack of care and supervision. After the trial court adjudicated the children dependent, they were committed to the care of the agency, and placed in the appellant's home as a kinship caregiver. However, the trial court later removed the children from the appellant's home, and terminated his kinship care. Subsequently, the trial court discovered that the appellant was not the biological parent of the children, and it

ruled that he had no standing to proceed in the dependency matter.

On appeal, the appellant alleged that he had standing in the dependency proceedings because he cared for the children for most of their lives, including the time period prior to and when they were adjudicated dependent. The appellant did not assert standing under section 6336.1 of the Juvenile Act, but through his *in loco parentis* relationship.

This Court explained standing through *in loco parentis* as follows.

Pennsylvania recognizes the common law doctrine of *in loco parentis*. "*In loco parentis* is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists." *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 916 (2001). Our Supreme Court has defined *in loco parentis* as follows:

> The phrase "*in loco parentis*" refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.... The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly, the same as between parent and child.

*Peters v. Costello*, 586 Pa. 102, 891 A.2d 705, 710 (2005) (citation omitted).

As *in loco parentis* status provides an individual with the same rights as a parent, it logically follows that an individual standing *in loco parentis* to a child has the same right to standing as a parent in proceedings pursuant to the

Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* with respect to that child.

*In re D.K.*, 922 A.2d at 933–34.

In *In re D.K.*, this Court concluded that the appellant had *in loco parentis* standing to participate as a party in the adjudication hearing and the dependency proceedings, as his care of the children at the time of their removal was at issue. Thus, we vacated the trial court's order, and remanded the matter to the trial court. *Id.* at 935.

In the instant appeal, the trial court provided the following analysis of the relevant statute and case law regarding standing.

> Similar to *In re L.C., II and In re D.S.,* [Aunt] does not fall into any of the three categories to which party status is granted. [Aunt], the child's maternal great[-]aunt, is not a parent of the minor child. Minor child's [m]other is a participant in the dependency proceeding and is represented by counsel. Furthermore, [Aunt] was not the child's legal custodian nor did she become the child's legal custodian during the course of the dependency proceeding[s]. [Aunt] was not the child's legal custodian at the beginning of the dependency proceedings. In her Emergency Motion, [Aunt] alleged that [C]hild's [m]other granted her custody in a signed agreement from December 2009. However, nothing in this agreement confers legal custody onto [Aunt] A review of the record shows that there were no court orders granting [Aunt] legal custody of the minor child at any time. Although [Aunt] may have been the minor child's primary caregiver at some point prior to the initiation of the dependency proceedings, this alone does not provide [Aunt] with party status. In addition, [Aunt] never gained the status of legal custodian. After dependency was adjudicated

in June 2011, BCCYS maintained legal custody of the minor child. Where a relative has been providing care to a minor child after adjudication of dependency pursuant to kinship placement, the agency retains legal custody of the child. *In re B.S.*, 923 A.2d 517, 524 (Pa.Super.2007). Thus, even though [Aunt] was providing care for the minor child from June 2011 to January 2012, she was doing so pursuant to kinship placement[,] and BCCYS retained legal custody of the child. Lastly, it is not [Aunt]'s care and control of the minor child which is the subject of the dependency proceeding. A review of the dependency petition which was submitted by BCCYS at the beginning of the dependency proceedings reveals that the allegations concern the care and control of [C]hild's Mother and Father.

Based on the above, the [trial] court concludes that [Aunt] does not fall into any of the three classes of individuals who have standing to participate in dependency proceedings. However, this is not the end of our discussion on standing, because the Superior Court of Pennsylvania has recognized that "an individual standing *in loco parentis* to a child has the same right to standing as a parent in proceedings pursuant to the Juvenile Act ..." *In re D.K.*, 922 A.2d 929, 933 (Pa.Super.2007). The Supreme Court of Pennsylvania has characterized *in loco parentis* as:

> The phrase *"in loco parentis"* refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of parental status, and, second, the discharge of parental duties.... The rights and liabilities

arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

*In re D.K.*, 922 A.2d 929, 933 (quoting *Peters v. Costello* [586 Pa. 102], 891 A.2d 705, 710 (Pa.2005)).

In *In re D.K.*, [a]ppellant was initially believed to be the minor children's biological father. *Id.* at 931. The minor children, who had resided with [a]ppellant since infancy, were brought to the attention of [Philadelphia Department of Human Services ("DHS")] based on concerns regarding [a]ppellant's care and control. *Id.* at 931–32. Appellant had been the primary caregiver of the minor children for the majority of their lives, including the time immediately prior to the determination of dependency. *Id.* Neither of the children's biological parents were involved with their daily care. *Id.* at 932 n. 4. After it was discovered that [a]ppellant was not the biological father of either minor child, the children were removed from his home. *Id.* at 931. The Superior Court concluded that [a]ppellant **did** have standing to participate in the dependency proceedings based on his *in loco parentis* status. *In re D.K.*, 922 A.2d at 955 [935]. This conclusion was based on the facts that the [a]ppellant had been the children's primary caregiver for the period of time immediately preceding [the] dependency[,] and it was **his care and control which was the subject of the dependency proceeding.** *Id.* at 933 (emphasis added).

[Aunt] alleges in both her Emergency Motion and in Alleged error four (4) of her Concise Statement that she has standing to participate in the dependency proceedings, because she stood *in loco parentis* to the minor child. However, [the trial court] believes that

[Aunt] does not stand *in loco parentis* to the minor child[,] and that [Aunt's] relationship to the minor child is not of the kind which the Superior Court was concerned with in *In re D.K.* when it extended standing to those *in loco parentis.* As illustrated by comparison to *In re D.K.,* [Aunt] was not the minor child's primary caregiver for the period of time immediately preceding [the] adjudication of dependency[,] and it was not [Aunt's] care which gave rise to the dependency proceedings[s]. In *In re D.K.,* [a]ppellant had assumed the entirety of the care and control of the minor children. Neither of the biological parents of the minor children [was] involved with their care. It was concerns regarding [a]ppellant's care which gave rise to the dependency proceeding[s]. In contrast, while this [c]ourt believes that [Aunt] has been involved to some extent with the minor child since her birth, [Aunt] never assumed the entirety of the minor child's care and control. The minor child's [m]other remained a part of her life[,] and was primarily responsible for her care during the period of time immediately preceding the filing of the dependency petition. It was this care by the minor child's [m]other which gave rise to the dependency proceedings. Therefore, the [c]ourt concludes that [Aunt] does not have standing to participate in the minor child's dependency proceedings[,] and that [Aunt's] alleged error four (4) has no merit.

Trial Court Opinion, 8/14/12, at 6–9.

■ Upon a careful review of the record in this matter and the controlling case law, we find that the trial court did not commit an error of law or abuse of its discretion in concluding that Aunt did not fall into any of the three categories for standing to intervene and participate in the dependency proceedings, as explained by the trial court. Moreover, the trial court properly determined that Aunt did not have standing *in loco parentis.* The trial court based its conclusions on the evidence that it admitted in the two hearings on the motions for placement held in February and May of 2012, at which Aunt and A.D. were present. *See* Trial Court Opinion, 8/14/12, at 10. The record supports the trial court's credibility determinations regarding Aunt's actions with regard to Child that would give rise to her *in loco parentis* standing in Child's dependency proceedings. We find no abuse of the trial court's discretion, and will not disturb the trial court's decision that the facts established that Aunt lacked standing *in loco parentis.*

Next, we review the trial court's ruling on Aunt's first, second, and third issues. The trial court stated as follows.

Lastly, the [c]ourt will briefly deal with [Aunt's] alleged errors one (1), two (2), and three (3), in which [Aunt] questions the validity of the [c]ourt's handling of the procedural disposition of her Emergency Motion. In short, [Aunt] questions the [c]ourt's decision to allow BCCYS twenty (20) days to respond to her Emergency Motion without a hearing. "[A] trial court has the inherent authority to regulate the practice before it." *In re Petition to Change Representation Plan of Octorara Area Sch. Dist.,* 722 A.2d 767, 769 (Pa. Commw[Cmwlth].1999) (citing *Appeal of Borough of Churchill* [525 Pa. 80], 575 A.2d 550 (Pa.1990)). The only limitations on that authority are statutory or constitutional requirements. *Thompson v. Am. Steel & Wire Co.* [317 Pa. 7], 175 A. 541, 543 (Pa.1934) (citing *First Nat'l Bank of Pittsburgh v. Baird* [300 Pa. 92], 150 A. 165 (Pa.1930)). Because there are no specific statutory rules providing for the procedural disposition of a motion similar to [Aunt's] motion, the [c]ourt had the authority to choose a

procedure which it believed would fairly and efficiently address the concerns of [Aunt's] Emergency motion.

Trial Court Opinion, 8/14/12, at 11.[5]

We observe that, in attempting to have standing to participate as a party in the dependency proceedings relating to Child, Aunt's motion was akin to a motion to intervene. Rule 1133 of the Rules of Juvenile Court provides that, [u]pon the filing of a motion to intervene and after a hearing, the court shall enter an order granting or denying the motion. *See* Rules of Juvenile Court, Rule 1133. Specifically, Rule 1133 provides:

**Rule 1133. Motion to Intervene.**

> **A. Contents.** The motion to intervene shall include:
>
>> (1) the name and address of the person moving to intervene;
>>
>> (2) the relationship of the intervening person to the child;
>>
>> (3) the contact between the child and the intervening person;
>>
>> (4) the grounds on which intervention is sought; and
>>
>> (5) the request sought.
>
> **B. Action by court.** Upon the filing of a motion to intervene and after a hearing, the court shall enter an order granting or denying the motion.

■ Here, the trial court noted that it had held two hearings concerning the parties to the dependency and the placement of Child, one in February of 2012, and the other in May of 2012, and that Aunt and her husband, A.D., were present at both hearings. *See* Trial Court Opinion, 8/14/12, at 10. Upon considering Aunt's motion and the evidence from both of the hearings, the trial court found insufficient grounds for granting Aunt's motion to intervene, *i.e.*, Aunt failed to establish that she had either statutory standing or stood *in loco parentis* as to Child. Thus, the trial court could deny the motion under paragraph B of Rule 1133 for insufficient grounds for the motion. *See* Rule 1133 Comment. Upon a careful review of the record in this matter and the controlling case law, we find that the trial court did not commit an error of law or abuse of its discretion in its procedural disposition of Aunt's motion. *In re R.J.T.*, 9 A.3d at 1190.

Next, we address Aunt's fifth and tenth issues together. We observe that her tenth issue was her twelfth issue in her Concise Statement of Errors Complained of on Appeal. Additionally, we review Aunt's eleventh issue, whether the trial court erred and abused its discretion when it did not consider the fact that she had completed most of the requirements for her kinship/foster care license.[6] With regard to these issues, the trial court stated as follows.

> In alleged error five (5), [Aunt] asserts that [the trial c]ourt did not acknowledge that she and her husband,

---

5. Aunt failed to raise the seventh and eighth issues in her Statement of Questions Involved in her brief in her Concise Statement of Errors Complained of on Appeal, thus waiving those issues. We find, however, that the trial court's reasoning regarding its handling of the procedural aspects of the motions before it applies equally to these issues, and they are subsumed into her first, second, and third issues.

6. Aunt failed to preserve in her Concise Statement of Errors Complained of on Appeal the sixth issue in her brief, *i.e.*, whether the trial court erred and abused its discretion when it did not recognize that Appellant filed her "Intent to Adopt" in a timely manner, thus waiving that issue. We find, however, that the trial court addressed Aunt's "Intent to Adopt" when it decided that it was in the best interests of Child to be placed with G.D. and C.D., another kinship foster family.

A.D., did, subsequent to the removal of the minor child from their home, obtain their foster care license. In alleged error twelve (12), [Aunt] asserts that [the trial c]ourt did not consider the best interests of the minor child. The [c]ourt aims to address these issues together as the [c]ourt believes both issues were adequately addressed when the [c]ourt held two hearings in February and May 2012 to determine the most appropriate placement of the child. First, the [c]ourt notes that it allowed [Aunt], her husband, and their counsel to be present at the hearings. At these hearings, the [c]ourt heard testimony and argument and gathered evidence to aid it in making the determination as to what placement best suited the minor child's interests. The [c]ourt did, in fact, consider that A.D. and [Aunt] had received their foster care license. However, the [c]ourt felt, when considering all of the evidence, that the child's best interests would be met by placement with G.D. and C.D., another kinship foster family.

Trial Court Opinion, 8/14/12, at 10–11.

 This Court observes that Aunt attached as an exhibit to her motion a copy of the Authorization for Temporary Child Guardianship/Physical Custody that Child's mother executed in favor of Aunt on December 4, 2009. The trial court considered this document in the hearings held regarding Child's placement in February and May of 2012. Child's placement had changed after Child's mother executed the authorization, so the trial court determined that it was not evidence of Mother's intention to place Child in the custody of Aunt. Aunt also attached to her motion to intervene, as an exhibit, a copy of the

foster care license, which was approved effective February 15, 2012 through February 14, 2013, and issued on February 17, 2012. Upon a careful review of the record in this matter and the controlling case law, we find that the trial court did not commit an error of law or abuse its discretion in its disposition of Aunt's motion, leaving Child placed with G.D. and C.D. *In re R.J.T.*, 9 A.3d at 1190.

Accordingly, having thoroughly reviewed the record, the briefs of the parties on this matter, and the controlling case law, we affirm the trial court's order.[7]

Orders in Nos. 1367 MDA 2012 and 1368 MDA 2012 affirmed.

---

7. We note that the trial court did not foreclose the possibility of Aunt having standing in a custody action to seek custody of Child, nor did it preclude Aunt receiving notice of future proceedings in the dependency matter involving Child. *In re L.C., II,* 900 A.2d at 382–383; *In re D.S.,* 979 A.2d at 905; *In re D.M.,* 995 A.2d 371, 378 (Pa.Super.2010).