J-S13030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.O., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.O., NATURAL MOTHER | : : : : : : | |
| | : | No. 1574 WDA 2017 |

Appeal from the Order Entered October 4, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-033-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: I.J., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.O., NATURAL MOTHER | : : : : : : | |
| | : | No. 1575 WDA 2017 |

Appeal from the Order Entered October 4, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-032-2017

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 21, 2018**

C.O. ("Mother") appeals from the orders dated September 29, 2017, and filed October 4, 2017, granting the petitions of the Allegheny County Office of Children, Youth and Families ("CYF") for the involuntary termination of her parental rights to her two children:  H.O., born in September of 2009

and I.J., born in October of 2002 (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(2), (8), and (b).[1]  We affirm.

The orphans' court accurately and aptly set forth the factual background and procedural history of this case in its Pa.R.A.P. 1925(a) Opinion to this Court.  Orphans' Court Opinion, 12/22/17, at 1–5.  In short, following a two-day hearing, the orphans' court found that "[t]he cycle of Mother making progress, receiving expanded visitation, and then having setbacks repeated itself up until the termination hearing." *Id.* at 4.  Based on the facts of record, the orphans' court concluded "that grounds to terminate Mother's parental rights existed pursuant to 23 Pa. C.S. § 2511(a)(2) and (a)(8)." *Id.* at 5. Additionally, pursuant to 23 Pa.C.S. § 2511(b), the orphans' court opined that termination would serve the needs and welfare of the Children. *Id.* at 7.

On October 25, 2017, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court, *sua sponte*, consolidated the appeals on November 14, 2017.  Mother raises the following single issue on appeal:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of Natural Mother's parental rights would serve the needs and welfare of the children pursuant to 23 Pa.C.S. §2511(b)?

---

[1]  On September 29, 2017, the orphans' court confirmed the consent to termination of parental rights filed by S.W.D., father of H.O. ("Father"). Father did not file an appeal, and he is not a party to the instant appeal. N.B.J., Sr., is the father of I.J.  N.T., 7/11/17, at 58.  The record does not indicate the status of his parental rights, but he is not a party to this appeal.

Mother's Brief at 8; Pa.R.A.P 1925(b) Statement, 10/25/17.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel–Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.  *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).  We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'"  *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).  "It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination."  *In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (citation omitted).  Moreover, this Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child.  *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

Initially, we note that Mother has waived any challenge to the sufficiency of the evidence to support termination under Section 2511(a) by her failure to include such a challenge in both her concise statements of errors complained of on appeal and the statement of questions involved in her brief on appeal. *See In re G.D.*, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013) (citing

***Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797

(Pa. Super. 2006) (holding that an appellant waives issues that are not raised

in both his concise statement of errors complained of on appeal and the

statement of questions involved in his appellate brief)). Indeed, Mother

concedes that CYF satisfied its burden of proof with regard to 23 Pa.C.S. §

2511(a)(2). Mother's Brief at 16. Rather, she challenges the orphans' court's

orders only as to Section 2511(b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

* * *

**(b) Other considerations.**—The court in terminating the rights
of a parent shall give primary consideration to the developmental,
physical and emotional needs and welfare of the child. The rights
of a parent shall not be terminated solely on the basis of
environmental factors such as inadequate housing, furnishings,
income, clothing and medical care if found to be beyond the
control of the parent. With respect to any petition filed pursuant
to subsection (a)(1), (6) or (8), the court shall not consider any
efforts by the parent to remedy the conditions described therein
which are first initiated subsequent to the giving of notice of the
filing of the petition.

23 Pa.C.S. § 2511(b).

Specifically, Mother challenges the trial court's adoption of:

the findings of Dr. Bliss that [Mother] was unable to care for the
[C]hildren due to her "psychological functioning, personality
traits, and intellectual difficulties." This conclusion was based
upon the trial court's perceived faults on the part of [Mother] in
relation to her family plan and court ordered goals. The fault-
based analysis constituted an abuse of the trial court's discretion
as well as an error of law.

Mother's Brief at 21 (citations omitted).

- 5 -

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has explained as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). We have further explained:

> When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." *In re E.M.*, 533 Pa. 115, 620 A.2d 481, 484–85 (1993). In the case of an unhealthy bond, "attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact." *In re T.S.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013).

*In re Adoption of J.N.M.*, ____ A.3d ____, 2018 PA Super 3, *5 (Pa. Super. 2018). Moreover, this Court has held:

> "[T]he orphans' court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert." *In re K.K.R.–S.*, 958 A.2d 529, 533 (Pa. Super. 2008)). . . . Furthermore, the orphans' court is free to rely upon the assessments of social workers and caseworkers. *In re M.A.B.*, 166 A.3d 434, 444 (Pa. Super. 2017).

*Id.* at *6.

- 6 -

In assessing whether termination of Mother's parental rights served the Children's needs and welfare, the orphans' court opined as follows:

> In this matter, the evidence amply supported the [c]ourt's conclusion that termination of Mother's parental rights served the Children's needs and welfare. At the conclusion of the hearing, the Children had been in placement for 22 months. I.J. was 14 years old and H.O. was 8 years old.
>
> The family therapist working with the family from October 2016 until July 2017 observed the Children's behavior following Mother's angry outbursts. Following an incident in January 2017 where the police needed to be called to deescalate Mother's behavior, H.O. appeared "really afraid" and began to cry. I.J. attempted to deescalate the situation and Mother threatened to physically reprimand her. Following the final incident in July 2017, the therapist described the Children as "really jumpy and traumatized."
>
> Dr. Bliss conducted two interactional evaluations between Mother and the Children, as well as individual evaluations of Mother and the Children. Dr. Bliss described Mother's interactions with I.J. as typical of interactions between siblings, or peers, as opposed to appropriate parent-child interactions. In contrast, Mother's interactions with H.O. would vary between Mother not paying attention to H.O., to then suddenly engaging in "very extreme hyperactive physical affection to an excessive degree." Dr. Bliss noted that Mother did not engage in any typical parenting behaviors with either child.
>
> Dr. Bliss testified that both Children love Mother and were happy to spend time with her. However, Dr. Bliss opined that the attachment between the Children and Mother was not a positive attachment for a parent/child relationship. Dr. Bliss ultimately concluded that "because Mother is not currently in a position to care for her kids and it seems unlikely that she will be able to in the near future due to her psychological functioning, personality traits, and intellectual difficulties, it would be in the Children's best interest to proceed to permanency . . . and for termination of parental rights." In addition, Lonna Latham's testimony supports the [c]ourt's conclusion that the Children's existing bond with [M]other is actually harmful to them. As there is no positive parent-child bond to preserve, the [c]ourt was justified in

concluding that termination of Mother's rights serves the Children's needs and welfare.

Orphans' Court Opinion, 12/22/17, at 6–7 (citations omitted).

Upon review, we reject Mother's argument that the orphans' court's conclusion was fault-based. Rather, it was based on consideration of testimony provided by a caseworker, a therapist, and an expert, all of whom witnessed firsthand Mother's negative interaction with the Children. The CYF caseworker and the Three Rivers Adoption Council therapist testified that Mother's behavior is not stable because of her mental health; when Mother does not take her medication, she "becomes very violent, angry and dangerous, and cannot be deescalated." N.T., 7/11/17, at 85; *see also* N.T., 7/11/17, at 18–33, 36–40, 69–74, 80–88 (describing Mother's behavior and its effect on the Children). According to these witnesses, Mother's behaviors manifested during her visits with the Children through her use of profanity, raising her fist to I.J., making the Children feel unsafe, and slapping the therapist. *Id.* at 20–21, 24, 33, 70, 85, 104–105. The caseworker also testified that the Children have a comfortable relationship with their foster mother; the caseworker had no concern that termination would be detrimental to the Children. *Id.* at 88–89, 96, 100–102. The expert, Dr. Bliss, observed that Mother and the Children did not have a positive parent-child relationship and that Mother did not engage in any typical parenting behaviors with the Children. N.T., 9/29/17, at 23, 28. This testimony established that Mother was unable to provide love, comfort, security, and stability to the Children.

- 8 -

Rather, her behavior compromised the Children's "physical and emotional" safety and caused them to be "jumpy and traumatized." *Id.* at 39–40, 48. We conclude that the orphans' court properly discerned the effect on the Children of permanently severing their unhealthy bond with Mother and determined that termination would best serve their needs and welfare.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2018