J-S42019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.D.L.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.A.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 805 EDA 2019 |

Appeal from the Decree Entered, February 13, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000098-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: U.N.C.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.A.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 808 EDA 2019 |

Appeal from the Decree Entered, February 13, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000099-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: N.L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.A.E., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 811 EDA 2019 |

Appeal from the Decree Entered, February 13, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000100-2018.

J-S42019-19

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED SEPTEMBER 06, 2019**

In this consolidated matter, C.A.E. (Mother) appeals the decrees granting the petitions filed by the Philadelphia Department of Human Services (DHS) that involuntarily terminated her parental rights to her three children (14-year-old J.D.L.E.; 12-year-old N.L.W.; and 4-year-old U.N.C.E.) pursuant to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). After review, we affirm.

We glean the relevant factual and procedural history from the trial court opinion filed pursuant to Pa.R.A.P. 1925(a):

> On April 11, 2016, DHS received a General Protective Services (GPS) report alleging that J.D.L.E. was diagnosed as suffering from Oppositional Deficient Disorder (ODD) and Attention Deficit Hyperactivity Disorder (ADHD) and that Mother refused J.D.L.E.'s school to administer medication. The GPS report also alleged that J.D.L.E. was highly disruptive in school. On April 12, 2016, DHS visited Mother's home and found the children unattended. DHS immediately telephoned Mother who returned to the home visibly intoxicated. During the visit, Mother inexplicably instructed the children to leave the house and locked the children outside. In response, DHS called the police to drive the children to foster care. The same day, DHS obtain an Order of Protective Custody (OPC) for the children. On May 2, 2016, all children were adjudicated dependent.
>
> On July 28, 2017, Turning Points for Children (TPFC), the Community Umbrella Agency (CUA) held a revised Single Case Plan (SCP) meeting. The objectives identified for Mother were (1) to sign all necessary consent forms; (2) to participate in individual therapy and follow recommendations; (3) to participate in intensive case

_____

[*] Retired Senior Judge assigned to the Superior Court.

management as recommended; (4) to take medication as prescribed; (5) to comply with court ordered visitation; to attend drug and alcohol treatment; (6) to attend all medical, dental and optical appointments; (7) to maintain safe and appropriate housing with adequate space and operable utilities; and (8) to create a financial plan.

The underlying petition to terminate Mother's parental rights to the children was filed on February 5, 2018 after Mother failed to meet her SCP objectives. Specifically, Mother failed to receive substance abuse treatment or mental health treatment and failed to provide adequate housing. On February 13, 2019, after a hearing[1, 2], the trial court ruled to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and found that termination of the Mother's parental rights was in the best interests of the children pursuant to 23 Pa.C.S.A. § 2511(b).

*See* Trial Court Opinion, 5/30/19, at 2-4 (citations to the record omitted)(footnotes added).

On March 12, 2019, Mother filed the initial notice of appeal *pro se*, notwithstanding the fact that she was still represented by trial counsel. Thereafter, on May 3, 2019, the trial court granted the trial counsel's motion to withdraw and appointed new representation. We directed Mother's new counsel to file an amended statement pursuant to Pa.R.A.P. 1925(b). Mother and her new counsel complied. Mother presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother

---

[1] The children's interests were properly represented pursuant to 23 Pa.C.S.A. 2313(a).

[2] The termination hearing occurred over the course of two dates: August 14, 2018 and February 13, 2019.

pursuant to 23 Pa.C.S.A. § 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties?

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2) where Mother presented evidence that she had substantially completed her Family Service Plan goals and has the present capacity to care for the children?

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(5) where evidence was presented to show that Mother is now capable of caring for her children after she substantially completed her family service plan goals?

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(8) where evidence was presented to show that Mother is now capable of caring for her children after she substantially completed her family service plan goals?

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511 (b) where evidence was presented that established the children had a close bond with their Mother and had lived with their Mother for most of their lives. Additionally, when permitted Mother consistently visited with her children?

Mother's Brief at 7.[3]

_____

[3] We observe that Mother's statement of the questions involved do not match verbatim those issues raised in her amended concise statement of matters complained of on appeal. However, Mother preserves these issues because they are fairly suggested by the questions listed in the amended concise statement. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested

We review these claims mindful of our well-settled standard or review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond

---

thereby."); *see also In re G.D.*, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013) (concluding "any issue not raised in a statement of matters complained of on appeal is deemed waived.").  Naturally, we do not address those issues in her amended concise statement that Mother has decided to forfeit.

- 5 -

> between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as Section (b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Instantly, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b).

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> (b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 6 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), (b).

Regarding Section 2511(a)(2), we have explained:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citations, internal quotation marks, and indentation omitted).

Mother essentially concedes she was previously incapable of parenting, but she maintains that no evidence of present incapacity existed at the time of the termination hearing. On appeal, she seeks to re-litigate the factual findings by contending that she complied with her Family Support Plan goals. *See* Mother's Brief at 16. Her contention is not supported by the record.

As the trial court observed in its opinion, the social worker testifying on behalf of the Community Umbrella Agency stated that Mother has failed to achieve her goals. Mother lives in a house, but it is evidently owned by her adult son who is a registered sex offender. The fact that Mother outwardly

denies this does not assuage the safety concerns felt by both DHS and the trial court. Moreover, Mother lost her overnight visits because there were unknown persons coming in and out of the home. DHS also had concerns that Father still resided with Mother, as indicated in his criminal court paperwork. Father had a history of domestic violence against Mother and had sexually assault one of Mother's older, non-subject children.

The court also believed the social worker's testimony that Mother has refused to take the medication prescribed to her by psychiatric evaluators. She has denied she has any mental health issues. Mother's cognitive ability raises still other concerns. The parenting capacity evaluator found Mother's insight was limited and her judgment was variable. Mother has difficulty with any non-concrete thinking. To the extent that Mother has demonstrated meager parenting ability, it must be attributed in large part to the intensive in-home services she receives to aid Mother's daily activities. At the time of the termination, Mother acknowledged that she had just begun to learn to accomplish tasks on her own.

Not only had Mother demonstrated an inability to care for the children, she also destabilized the children's placements. The children had to be removed from foster homes, because Mother encouraged the children not to listen to the foster parents' rules. Mother refused to acknowledge the severity of the children's mental health issues.

Regarding the first prong of the termination analysis, the trial court concluded that DHS provided clear and convincing evidence demonstrating

Mother's incapacity to parent, that incapacity has caused the children to go without necessary parental care, and that Mother cannot remedy the causes of this incapacity. This conclusion under Section 2511(a)(2) was not an abuse of discretion.

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability.... [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citing *In re K.K.R.–S.,* 958 A.2d 529, 535–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *Id*., 93 A.3d at 897-898; *see also In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was

- 9 -

affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *Id*. at 898 (citation omitted).

Instantly, Mother contends that the children all have a bond with her. *See* Mother's Brief at 18. She points to the fact that all of the children have lived with her at some point and that none are in a current placement. *Id.*

While Mother testified that the children want to live with her, other testimony, which the court found to be credible, directly contradicted Mother's averment. The visitation coach testified that the two older children (J.D.L.E. and N.L.W.) told Mother they did not want to return home. Mother' claimed that other people put those thoughts in the children's heads. U.N.C.E., the youngest child, had originally been more conflicted about the visits, evidencing a desire to be with Mother during her visits. However, U.N.C.E.'s counsel articulated that she wishes to be adopted. To that end, the court found that U.N.C.E.'s closest attachment is to her siblings, and that she would suffer irreparable harm if separated from *them*. When U.N.C.E. was separated from the older siblings, her behavior "went completely downhill." *See* N.T., 8/14/18, at 79. The trial court concluded that Mother did not have a bond with the children worth preserving.

Beyond the presence of the bond, the trial court can equally emphasize the safety needs of the child, and should also consider the intangible, such as the love, comfort, security, and stability the child might have with the foster

parent. *See In re Adoption of C.D.R.*, 111 A.3d at 1219. Contrary to Mother's assertion, all of the children are placed with a pre-adoptive foster parent.[4] While Mother denied that the children had any issues, the foster parent was the one providing vital security and stability for these children. The foster parent has helped the children with their homework, she takes them to doctors' appointments, and she is able to offer the children emotional guidance and curb their problematic behaviors. Although we do not conduct a termination analysis by weighing the biological parent against the foster parent, we cannot ignore the trial court's finding that Mother has been a destabilizing force in the children's lives while the foster parent has righted the ship.

Regarding the second prong of the termination analysis, the trial court concluded that DHS provided clear and convincing evidence that termination would best serve the children's needs and welfare. We conclude that this determination was not an abuse of discretion.

Decrees affirmed.

---

[4] N.L.W. was hospitalized during the termination hearing, and the other two children were placed in respite care while an investigation was conducted. The investigation concluded and the court returned the children to the care of the pre-adoptive foster parent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/19