J-S23030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., MOTHER, | |
| Appellant | No. 3440 EDA 2014 |

Appeal from the Decree Entered October 28, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000278-2014

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 07, 2015**

J.C. ("Mother") appeals the decree entered on October 28, 2014, which granted the petition filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency"), seeking to involuntarily terminate Mother's parental rights to her daughter, A.C. a/k/a A.C.C. ("Child"), born in May of 2005.  The decree terminated Mother's parental rights pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changed Child's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351(f).[1]  We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

[1] On June 17, 2014, the trial court entered decrees involuntarily terminating the parental rights of Child's purported father, S.J.G. a/k/a S.G., as well as any unknown father.  Neither S.J.G. nor any unknown father filed a notice of

*(Footnote Continued Next Page)*

The trial court accurately set forth the factual background and procedural history of this appeal in its opinion entered on December 30, 2014, as follows:

On August 29, 2009, the Department of Human Services (DHS) received and substantiated a General Protective Services Report (GPS) regarding the lack of supervision of the child. The substantiated facts were that [Child], four years old, was found outside the family home alone. The report also stated the Philadelphia Police officers entered the family home where [Child] lived and there was no appropriate supervision. The child was home alone.

Subsequently, [Child] was placed in the care of her maternal grandmother. Pursuant to a family agreement, [Child] would live in Florida with her maternal grandmother [("MGM")]. Alternatively, DHS prepared a safety plan, in the event [Child] remained in Philadelphia[.[2]]

On May 24, 2011, [MGM] filed for primary physical and legal custody of [Child] through the Domestic Relations Branch of Family Court.

On February 5, 2013, [Mother] was arrested and charged with possession of a controlled substance by a person not registered under the Controlled Substance Act. (CSA).

On February 7, 2013, [Mother] was released from incarceration. Mother was subsequently re-arrested on or about February 28,

*(Footnote Continued)* ─────────────────

appeal from the decree terminating his parental rights, and he is not a party to the instant appeal.

[2] Testimony at the October 28, 2014 hearing revealed that Child was removed from Mother's care in 2009 and placed with the maternal grandparents but was subsequently returned to Mother. Child was removed from Mother in 2010 and placed with maternal grandparents but was again returned to Mother. Child was removed for the third time in 2013 and has been living with the maternal grandparents since that time. N.T., 10/28/14, at 24–25.

2013[,] after The Honorable Dawn A. Segal issued a bench warrant for her arrest.

On February 27, 2013, DHS received an Emergency General Protective Services (EGPS) report alleging that [M]other had been arrested and was incarcerated. [Child] was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Oppositional Defiant Disorder (ODD), and a mood disorder. Additionally she had a disorder, Pica. Pica is a disorder which is characterized by an appetite for largely non-nutritive substances such as clay, dirt, or sand. The report also alleged that on February 27, 2013, the school requested that maternal grandparents pick up [Child] from school early due to [Child's] unmanageable behavior. [Child] had eaten paper and pencils in school that day and licked her desk. These behaviors were caused due to the non-administration of her prescription medications. [Child's] mental health therapist at The Tree of Life subsequently prescribed the appropriate medications.

On April 15, 2013, In-Home Protective Services (IHPS) were implemented through Wordsworth Academy to assist [M]other with enrolling in parenting education classes, mental health treatment, and drug/alcohol treatment. Furthermore, IHPS would ensure that the family was adhering to [Child]'s mental health treatment and medication management. Lastly, IHPS would monitor [Child]'s school attendance.

In May of 2013, [M]other was found non-compliant with IHPS. Moreover, [MGM] evicted [M]other from [MGM's] home due to [M]other's continued drug/alcohol abuse. On May 8, 2013, [M]other was found in the street by paramedics, semi-conscious and incoherent.

She was transported to Episcopal Hospital and admitted for inpatient mental health and drug/alcohol treatment. The same evening [M]other discharged herself from Episcopal Hospital against medical advice. Subsequently, her whereabouts became unknown. DHS advised [MGM] to file for custody.

On June 7, 2013, DHS filed a dependency petition on behalf of [Child,] who continued to reside with her grandparents. Maternal grandparent[s] requested kinship care assistance.

On July 8, 2013, a Family Service Plan (FSP) meeting was held. The parental objectives were the following: (1) parents to be referred to The Clinical Evaluation Unit (CEU), (2) parents to complete the Achieving Reunification Center program (ARC), and (3) parents to attend visits with the child. The parents did not attend the FSP meeting.

On July 9, 2013, The Honorable Jonathan Q. Irvine adjudicated [Child] dependent and committed her to DHS custody. The Court specifically ordered [M]other to the Clinical Evaluation Unit (CEU) for a forthwith drug screen/evaluation, dual diagnosis and monitoring. The Court further ordered [M]other to comply with the CEU recommendations. The parents did not attend the hearing.

On September 9, 2013, [M]other tested positive for marijuana and PCP at the CEU.

[Child]'s initial permanency review hearing was held on October 31, 2013, before Juvenile Master Tammy Langenberg. The [c]ourt ordered [Child] to remain as committed. The [c]ourt received a report of non-compliance from the CEU. Subsequently, [M]other was again referred to the CEU for a forthwith drug screen and assessment, dual diagnosis and monitoring. Lastly, [M]other was ordered to participate in random drug screens including alcohol.

On October 31, 2013, [M]other tested positive for PCP again at the CEU.

On December 16, 2013, DHS referred [M]other to ARC to assist with the following FSP objectives: a mental health evaluation, housing, financial counseling, employment services, drug/alcohol treatment, job training and Women's Empowerment Group.

On January 6, 2014, DHS learned that [M]other was noncompliant with ARC's outreach efforts on the following dates: December 20, 2013, December 23, 2013, December 24, 2013, December 27, 2013 and January 6, 2014. Due to [M]other's noncompliance[,] ARC closed/stopped its outreach efforts to her on January 6, 2014.

The matter was then listed on a regular basis before Judges of the Philadelphia Court of Common Pleas - Family Court Division -

Juvenile Branch pursuant to Section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351[,] and evaluated for the purpose of determining or reviewing the permanency plan of [Child] with the goal of reunification of the family.

In subsequent hearings, the DRO's reflect the [c]ourt's review and disposition as a result of evidence presented addressing the lack of compliance with drug/alcohol and housing[.]

Trial Court Opinion, 12/30/14, at unnumbered 1–3.

On May 30, 2014, DHS filed a petition to involuntarily terminate the parental rights of Mother, Father, and any unknown father to Child and to change Child's permanency goal to adoption. On June 17, 2014, the trial court held a bifurcated hearing on the petition and entered its decrees involuntarily terminating the parental rights of Father and any unknown father.

On October 28, 2014, the trial court held an evidentiary hearing on the petitions for involuntary termination and goal change with regard to Mother. DHS presented the testimony of Cheryl Barr, a DHS social worker assigned to the family. N.T., 10/28/14, at 6–7. Mother testified on her own behalf. *Id.* at 35. DHS presented an exhibit that was admitted into evidence and demonstrated that Child had been in DHS's care and custody since June 18, 2013. *Id*. at 9; DHS Exhibit 1. On October 28, 2014, the trial court entered the decree involuntarily terminating Mother's parental rights. On November 25, 2014, Mother filed a timely notice of appeal along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following two issues:

1. Did the Trial Court err in terminating the Appellant's parental rights under [23] Pa.C.S. Section 2511?

2. Did the Trial Court err in finding that termination of parental rights best served [Child's] developmental, physical and emotional needs under sub-section 2511(b)?

Mother's Brief at vi.[3]

Mother asserts that the trial court erred in terminating her parental rights because DHS failed to present clear and convincing evidence supporting termination. Mother's Brief at ix. Mother contends that she was compliant with her FSP objectives in that she had housing and was receiving drug and mental health treatment. *Id.* Mother also claims that her most recent positive drug screen was in June of 2014, and thereafter, she tested negative. *Id.* Accordingly, Mother argues that she had resolved all issues that had given rise to Child's removal from her care and placement. *Id.*

_____

[3] In the discussion portion of her appellate brief, Mother purports to raise a third issue, *i.e.*, whether the trial court erred in granting a goal change to adoption under section 6351 of the Juvenile Act. Mother's Brief at ix, 6–7. In her statement of questions involved in her brief, Mother did not raise the issue of the change of Child's permanency goal to adoption. "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Therefore, she has waived any challenge to the goal change to adoption. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived); *see also In re G.D.*, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013) ("[W]e will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, Pa.R.A.P. 2116(a) . . . .").

In reviewing an appeal from the termination of parental rights, we employ the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, [614 Pa. 275,] 36 A.3d [567,] 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, [613 Pa. 371], 455], 34 A.3d 1, 51 ([Pa.] 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

***In re I.E.P.***, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id**. (*quoting* **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). We focus on section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 8 -

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511 (a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.  *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).  The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include "acts of refusal as well as incapacity to perform parental duties."  *In re A.D.*, 93 A.3d 888, 895 (Pa. Super. 2014) (citing *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002)).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows:

> [Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (*quoting* *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

The trial court explained its decision to terminate Mother's parental rights under section 2511(a)(2) as follows:

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, [M]other failed to perform any parental duties for [Child]. The court found by clear and convincing evidence that [M]other failed to perform her parental duties. The testimony of the social worker indicated concern regarding [M]other's ability to maintain sobriety[.] (N.T. 10/28/14, pg. 13-14). [M]other continued to test positive for drugs. The last positive drug [screen] was in June of 2014. (N.T. 10/28/14, pg. 10-14, 25)[.] Furthermore, [M]other failed to comply with the CEU's request for random drug/alcohol screens. (N.T. 10/28/14, pg. 13-14)[.] Lastly, [M]other failed to maintain contact with DHS personnel. (N.T. 10/28/14, pg. 14-15)[.]

* * *

In the instant matter, [C]hild has been in care for over sixteen months. (N.T. 10/28/14, pgs. 51-52)[.] The testimony established that [M]other failed to inquire about the developmental growth and needs of [Child.] (N.T. 10/28/14, pg. 27)[.] Additionally, [M]other failed to respond to outreach by the social worker[.] (N.T. 10/28/14, pg. 30-32)[.] Furthermore, the testimony established that [C]hild is in a stable environment and adoption was in the best interest of [C]hild. (N.T. 10/28/14, pgs. 23)[.] Moreover, [M]other has not been compliant with her drug/alcohol treatment. (N.T. 10/28/14, pgs. 43, 48)[.] [M]other did not complete parenting classes. (N.T. 10/15/14, pg. 26-27)[.] Lastly, [M]other has not visited with [Child] since January 2014. (N.T. 10/15/14, pg. 26-27)[.]

* * *

The testimony established that [M]other did not have appropriate parenting skills. (N.T. 10/28/14, pg. 54)[.] [M]other failed to monitor [Child]'s medication management. (N.T. 10/28/14, pg. 8)[.] Furthermore, [M]other was unavailable during a medical emergency for [Child.] (N.T. 10/28/14, pg. 8-9)[.] Moreover, [M]other failed to comply with mental health treatment[.] (N.T. 10/28/14, pg. 55)[.] Lastly, [M]other does not have appropriate housing. (N.T. 10/28/14, pg. 54)[.]

Trial Court Opinion, 12/30/14, at unnumbered 4–5.

There is ample, competent, clear, and convincing evidence in the record to support the trial court's determination that Mother has not demonstrated any ability to remedy the circumstances which led to Child's placement, nor is there any indication that she could remedy such circumstances in the foreseeable future, even with continued services in place. After a careful review of the record, we conclude that the trial court aptly evaluated the evidence against the requirements of 23 Pa.C.S. § 2511(a)(2). We will not impose our own credibility determinations and re-weigh the evidence. We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826-27.

Having determined that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of section 2511(b) are satisfied. *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child under section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23

Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

The trial court explained its decision to terminate Mother's parental rights under section 2511(b) as follows:

In the instant matter, the testimony established that [C]hild would not suffer any irreparable emotional harm if [M]other's parental rights were terminated. (N.T. 10/28/14, pg. 22)[.] [C]hild has bonded with her grandparents. (N.T. 10/28/14, pg. 28, [22–23).] Furthermore, [Child's] grandparents are her primary caregivers who provide for her daily needs. (N.T. 10/28/14 pg. 22)[.] Additionally, the testimony described the relationship between [C]hild and her grandparents as very strong and loving. (N.T. 10/28/14, pgs. 22-23)[.] Lastly, the social worker testified that adoption is in [Child's] best interest. (N.T. 10/28/14 pg. 23)[.]

As explained in initial Order, the [t]rial [c]ourt found by clear and convincing evidence that the Department of Human Services

- 13 -

> met [its] statutory burden pursuant to 23 Pa.C.S.A. §2511(a)(1)
> (2) (5) and (8) and §2511(b)[,] and that it was in the best
> interest of [C]hild to change the goal to adoption for
> permanency. (N.T. 10/28/14, pgs. 54-55)[.] The social worker
> testified credibly. (N.T. 10/28/14, pg.55)[.]

Trial Court Opinion, 12/30/14, at unnumbered 6.

There is ample, competent, clear, and convincing evidence in the record to support the trial court's finding that Child's maternal grandparents meet all of her needs and welfare, and that Child, who has been in placement since June of 2013, has a strong bond with them. N.T., 10/28/14, at 18, 22–23. The competent evidence of record supports the trial court's determination that, although Child has some relationship with Mother, Child would not suffer any harm from the termination of Mother's parental rights. *Id.* at 18-20, 22-23. The competent evidence in the record also supports the trial court's finding that the termination of Mother's parental rights would serve Child's best interests. *Id.* at 22-23. Thus, we will not disturb the trial court's decision. ***Adoption of S.P.***, 47 A.3d at 826–827.

Accordingly, we affirm the trial court's decree terminating Mother's parental rights to Child pursuant to section 2511(a)(2) and (b) of the Adoption Act, and changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/7/2015