J-S83028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: N.N.W., A/K/A N.W., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| | |
| APPEAL OF: S.W., BIRTH FATHER | |
| | No. 950 WDA 2016 |

Appeal from the Order Entered June 3, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000028-2016

| | |
|---|---|
| IN RE: S.L.W., A/K/A S.J., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| | |
| APPEAL OF: S.W., BIRTH FATHER | |
| | No. 951 WDA 2016 |

Appeal from the Order Entered June 3, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): CP-02-AP-0000029-2016

| | |
|---|---|
| IN RE: Z.T.W., A/K/A T.W., A/K/A T.Z.W., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| | |
| APPEAL OF: S.W., BIRTH FATHER | |

No. 952 WDA 2016

Appeal from the Order Entered June 3, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000033-2016

| | |
|---|---|
| IN RE: N.J.W., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: S.W., BIRTH FATHER | |
| | No. 953 WDA 2016 |

Appeal from the Order Entered June 3, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000027-2016

| | |
|---|---|
| IN RE: S.L.W., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: S.W., BIRTH FATHER | |
| | No. 969 WDA 2016 |

Appeal from the Order Entered June 3, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000026-2016

J-S83028-16

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 1, 2016**

S.W. ("Father") appeals from the orders entered on June 3, 2016, granting the petitions of the Allegheny County Office of Children, Youth and Families ("CYF") for involuntary termination of his parental rights to his five children:[1]  Sr.W., born June of 2006; Nr.W., born September of 2009; Nh.W, born July of 2010; Zr.W., born October of 2011; and Sh.W., born February of 2013 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1),[2] (2), (5), (8), and (b).[3]  We affirm.

The trial court accurately and aptly set forth the factual background and procedural history of this case, as follows:

Although involved with the Allegheny County Office of Children Youth and Families ("CYF") for some time prior, the

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  We acknowledge that the abbreviations of the children's names in the captions differ from the abbreviations utilized throughout this Memorandum. For consistency, we chose to utilize the abbreviations used by the trial court.

[2]  The trial court orders reflect the termination of Father's parental rights under section 2511(a)(1), but the trial court opinion does not recite termination under that subsection.  **See** Trial Court Opinion, 8/4/16, at 1-2; **cf.** N.T., 6/1/16, at 79.

[3]  On June 3, 2016, the trial court also terminated the rights of A.R.L.J., a/k/a A.R.J., the Children's biological mother ("Mother").  Mother did not file an appeal, and she is not a party to the instant appeal.  Moreover, on that same date, the trial court also terminated the parental rights of any unknown father with regard to Nh.W., Zr.W., and Sh.W.  **See** N.T., 6/1/16, at 79.  No unknown father has appealed or is a party to the instant appeal.

- 3 -

family's case became court-active in September 2013 when the children—then aged 7 years old to 23 months[4]—were removed after reports that they were left unsupervised. At the time, Father was briefly incarcerated but was released soon after the shelter hearing. *See* Exhibit 3, Shelter Care Order of Court, dated September 30, 2013. After his release, Father apparently left the family, though it was never particularly clear how much he lived with them in the first place. *See* Exhibit 2, page 2. The children were adjudicated dependent on November 4, 2013. *See* Transcript of Testimony ("T.T."), dated June 1, 2016, at 7-10; 31; *see also* Exhibits 3–7 (the children's respective certified records). They were placed with the maternal grandmother ["Grandmother"]—their pre-adoptive foster mother—where they have remained since. CYF created a Family Service Plan ("FSP") to assist the parents' reunification with the child[ren]. *See* Exhibit 8. FSPs consist of goals, which are designed to track the parents' progress. The parents' goals were the same: to obtain safe and appropriate housing; to get a drug and alcohol evaluation and follow recommendations; to stay in contact with the agency and cooperate with services; to address any mental health issues via an evaluation; to visit the children. *See* T.T., at 17; 11. Father made no progress. In September 2014, the Court granted CYF's petition to proceed on an "Aggravated Circumstances" basis due to Father's lack of contact with his children. *Id*., at 31. Since the children's removal twelve months prior, he had visited twice. *See* Exhibit 2, Aggravated Circumstances Order of Court, dated September 8, 2014. An "Aggravated Circumstances" finding is warranted when the children are in the custody of a county agency (in this instance, CYF) and when Father's identity and whereabouts are known, but has failed to maintain substantial and continuing contact with the children for at least six months. See 42 Pa.C.S.A. § 6302. Upon the [c]ourt's finding of "Aggravated Circumstances," CYF was relieved of providing reasonable efforts to reunify the children with Father. *Id*.; *see also*, Exhibits 3-7, Aggravated Circumstances Orders, dated September 8, 2014. Father's noncompliance and noncontact continued. *See generally* Permanency Review Orders, Exhibits 3–7. CYF filed its petition

---

[4] The youngest child, Sh.W., actually was only seven months old in September of 2013. N.T., 6/1/16, at 6.

to terminate Father's rights on February 22, 2016. Father appeals.

Trial Court Opinion, 8/4/16, at 1–2.

On July 5, 2016, Father timely filed a notice of appeal[5] along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925 (a)(2)(i) and (b). This Court, *sua sponte*, consolidated the appeals on July 11, 2016.

Father raises the following single issue on appeal:

> I. Did the trial court abuse its discretion and/or err as a matter of law in concluding that Allegheny County Children, Youth and Families met its burden of proving that termination of Birth Father's parental rights would meet the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b) by clear and convincing evidence when such determination is not supported by the record?

Father's Brief at 13.[6]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a

---

[5] We note that Father's appeal was due to be filed no later than July 3, 2016, which was a Sunday. The following day, Monday, July 4, 2016, was a federal holiday, and the courts were closed. July 5, 2016, was the first date that the court was open for business after the Independence Day holiday. **See** 1 Pa.C.S. § 1908 (when the last day of appeal period falls on Saturday, Sunday, or any day made a legal holiday, such day is omitted from the computation).

[6] This is the sole issue raised in Father's Pa.R.A.P. 1925(b) statements, as well.

petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

***In re I.E.P.***, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We

have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). "It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination." *In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (citing *In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003)). Moreover, this Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), it is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*).

Initially we note that Father has waived any challenge to the sufficiency of the evidence to support termination under section 2511(a) by his failure to include such a challenge in both his concise statements of errors complained of on appeal and the statement of questions involved in his brief on appeal. *In re G.D.*, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013) (citing *Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal)). Indeed,

Father concedes that CYF satisfied its burden of proof with regard to 23 Pa.C.S. § 2511(a)(2). *See* Father's Brief at 20. Rather, he challenges the trial court's order only as to section 2511(b), asserting that the evidence was insufficient to support the termination of his parental rights under that section of the Adoption Act. Thus, we focus upon 23 Pa.C.S. § 2511 (b), which provides as follows:

> **§ 2511.  Grounds for involuntary termination**
>
> * * *
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511 (b). Father argues that there was insufficient evidence to support a finding that the termination of his parental rights best serves the Children's needs and welfare and that there was no relationship between the Children and him that would cause the Children to suffer irreparable harm if his rights were terminated. Father's Brief at 20–23.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has explained as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the

- 8 -

developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In assessing whether termination of Father's parental rights served the needs and welfare of the Children, the trial court noted as follows:

After consideration of testimony and evidence, the [c]ourt finds that CYF met its burden. Father has likely never provided any substantial parental care for these children. His visitations were so infrequent that CYF was relieved from providing reunification efforts. And so it was not surprising to learn from the CYF caseworker that the [C]hildren do not ask about their Father. The [C]hildren have been in the home of the maternal grandmother for nearly three years. For the three youngest children, the maternal grandmother is essentially the only caregiver they have ever known.

In her psychological evaluation report, psychologist Dr. Patricia Pepe noted that Father has not had any contact with the [C]hildren. Dr. Pepe reported that the [C]hildren are general[ly] doing very well and exhibiting positive functioning. Four-year-old Zr.W. had been having developmental and speech delays, but after assistance from service providers[,] he is now verbally expressive. Sr.W. is in the second grade and was acting out some at school. The grandmother suspected that these outbursts were related to another student's racist behavior, for the child exhibited positive functioning at football and at church. The [c]ourt notes that the child has made considerable progress considering that he was seven when he came into the grandmother's care and had *never* been in school. Nr.[W.] received an award for his high marks at school; Nh.[W.] also

- 9 -

does well at school, though there is some difficulty focusing. All
of the [C]hildren are in good health.

Dr. Pepe reported that the grandmother was the center of
the [C]hildren's attention, and that the grandmother was able to
be aware of all of the [C]hildren at the same time. Dr. Pepe
reported that the siblings exhibited positive interaction with one
another and there was a general harmonious tone to the family's
functioning. The [C]hildren remained positive and behaved,
even though there were five of them, four of [whom] were very
young. Dr. Pepe reported that she was amazed that the
[C]hildren could share with minimal problems. Critically, all five
of the [C]hildren "consistently exhibited multiple bonding
behaviors suggestive of a positive and primary attachment to
their grandmother, whom each child identified as 'mom.'" Dr.
Pepe concluded that all of the [C]hildren seemed happy, that the
grandmother presents as a "very positive permanent placement
resource." The [c]ourt notes that Dr. Pepe could not conduct an
interactional evaluation with Sr.W., because the family arrived
one hour late to the appointment. The interactional between Dr.
Pepe and Father was cancelled.

Given Father's continual lack of contact throughout the
duration of this case and throughout the duration of these
children's lives, the [c]ourt is constrained to opine that Father
does not know these [C]hildren and that these [C]hildren largely
do not know their Father. He has never provided for them. He
has never cared for them. He has never raised them, or sent
them to the doctor's office, or sent them to school, or sent them
gifts. There is no bond between them.

Trial Court Opinion, 8/4/16, at 4–5 (internal citations omitted).

We find guidance in *In re K.Z.S.*, 946 A.2d 753 (Pa. Super. 2008).

Therein, this Court explained that in cases where there is no evidence of any

bond between the parent and child, it is reasonable to infer that no bond

exists. *Id.* at 763. "The extent of any bond analysis, therefore, necessarily

depends on the circumstances of the particular case." *Id.* We instructed

that the court should also consider the intangibles, such as the love,

- 10 -

comfort, security, and stability the child might have with the foster parent. Additionally, we stated that the court should consider the importance of continuity of relationships and whether any existing parent-child bond may be severed without detrimental effects on the child. *Id.*

We further observed in *K.Z.S.* that where the subject child had been constantly and consistently separated from his parent for four years, any relationship between the two had to be "fairly attenuated," such that even if a bond existed, it did not defeat the termination of the mother's parental rights. *In re K.Z.S.*, 946 A.2d at 764. Based on the strong relationship that the child had with his foster mother, the child's young age, and his very limited contact with his mother, this Court found competent evidence to support the orphans' court's termination of the mother's parental rights. *Id.*

The same is true in this case. A parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). The record reflects that the trial court appropriately considered the

Children's needs and welfare and conducted a bond-effect analysis in deciding whether to terminate Father's parental rights.

After careful review, we conclude the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826–827. The Children's primary attachment is with Grandmother. They have resided with Grandmother, who plans to adopt them, since September 27, 2013. N.T., 6/1/16, at 24, 40. CYF caseworker, Sherri Ihrig, testified that Grandmother "provides for [the Children's] needs, food, [and] shelter . . . . She is the one who takes them to the doctor and the dentist, deals with the school." *Id*. at 35. Ms. Ihrig further testified that the Children "look to [Grandmother] as their parent." *Id*. Moreover, the Children last saw Father in April of 2014. *Id*. at 21. They do not ask about him. *Id*. at 39. The youngest two children, who were two years old and fourteen months old in April, 2014, were too young even to remember Father. N.T., 6/1/16, at 6.

Accordingly, it was proper for the trial court to determine that no bond exists such that the Children would suffer permanent emotional harm if Father's parental rights were terminated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (stating that any bond with the parent would be fairly attenuated when the child was separated from the parent, almost constantly, for four years). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *Adoption of C.L.G.*, 956

A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")). We, therefore, affirm the orders terminating Father's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2016