J-S48029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2324 EDA 2024 |

Appeal from the Order Entered August 7, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000309-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: S.L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2325 EDA 2024 |

Appeal from the Decree Entered August 7, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000500-2023

BEFORE:  STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 11, 2025**

Appellant C.W. (Mother) appeals[1] from the decree granting the petition filed by the Philadelphia Department of Human Services (DHS) to terminate Mother's parental rights to S.L.W. (Child), who was born in March of 2022 and was two years of age at the time of the termination of parental rights hearing,

_____

[1] We note that the trial court also terminated the parental rights of "any unknown putative father who [Mother] does not know."  N.T., 8/7/24, at 42.

and changing Child's permanency placement goal to adoption.[2] On appeal, Mother contends that DHS failed to establish by clear and convincing evidence the grounds to terminate Mother's parental rights. We affirm.

The underlying facts of this matter are well known to the parties. Briefly, after holding an evidentiary hearing, the trial court determined that DHS met its burden in establishing that Mother's parental rights to Child should be terminated. At the conclusion of the hearing, the trial court recited the procedural history of Child's case. *See* N.T., 8/7/24, at 40. The trial court stated that Mother "has not complied with the single case plan objectives, nor made progress to alleviate the need for placement." *Id.* at 41. The trial court added that Child "does not look to [Mother] to meet her needs but looks to her [foster mother] to do that." *Id.* at 42.

The trial court concluded that "[Child] deserves permanency" and that "it is in [Child's] best interest for parental rights to be terminated and for the goal to be changed to adoption." *Id.* The trial court then stated that Mother's parental rights were terminated under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). *Id.* The same day, the trial court entered a decree terminating

---

[2] This Court consolidated the two appeals *sua sponte* on September 27, 2024. *See* Order, 9/27/24.

Mother's parental rights to Child and an order changing Child's permanency placement goal to adoption.[3]

Mother filed a timely notice of appeal and complied with the mandates of Pa.R.A.P. 1925(a)(2) (governing children's fast track appeals). In lieu of a Rule 1925(a) opinion, the trial court issued a statement adopting its on-the-record findings from the August 7, 2024 hearing.[4] Trial Ct. Statement, 9/19/24, at 2 (unpaginated); *see also* Pa.R.A.P. 1925(a)(2)(ii).

_____

[3] The record reflects that Carla A. Beggin, Esq., served as Child's guardian *ad litem*. The trial court made an on-the-record determination that Child, who was two years of age at the time of the termination of parental rights hearing, was incapable of articulating a preference; therefore, there was no conflict that would have prevented Attorney Beggin from serving as both guardian *ad litem* and Child's legal counsel. *See* N.T., 8/7/24, at 40; *see also, e.g.*, *In re H.H.N.*, 296 A.3d 1258, 1263-64 (Pa. Super. 2023). Further, our Supreme Court has recognized that there is a presumption that there is no conflict between a child's best interests and legal interest when a child is too young to articulate a preference in the outcome of the proceedings. *In re T.S.*, 192 A.3d 1080, 1088-90 (Pa. 2018).

We note that in her brief, Mother includes "[a] note about [Child's] wishes," in which she states that the trial court should have made an inquiry to determine "to the best extent possible what [Child's] preference was, as required by *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017)[,] and its line of cases." Mother's Brief at 20-21. Mother did not include this issue in her Rule 1925(a)(2)(i) statement of errors complained of on appeal, nor did she include this issue in her statement of questions presented; therefore, to the extent she raises this as an issue for our review, this issue is waived on appeal. *See Obara Realty Group, LLC v. Atlas Real Estate Investments, LLC*, 279 A.3d 614, 617 n.2 (Pa. Super. 2022); *In re G.D.*, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013).

[4] We emphasize that our standards of review require deference to the trial court's findings of fact and credibility determinations and that, generally, this requires the filing of an opinion pursuant to Pa.R.A.P. 1925(a). *See In re*
*(Footnote Continued Next Page)*

Mother raises the following issues for our review, which for ease of disposition, we have re-numbered:

1. Was the trial court's decision to involuntarily terminate [Mother's] parental rights to [Child] supported by clear and convincing evidence of the relevant factors required under the Adoption Act, 23 Pa.C.S. § 2511(a) and (b)?

2. Was the trial court's decision to change Child's permanency goal from reunification with the parent to adoption supported by clear and convincing evidence, considering all the relevant factors required by the Juvenile Act, 42 Pa.C.S. § 6351(e), (f), and (f.1) and § 6336.1 that such disposition was in [Child's] best interests?

Mother's Brief at 7 (some formatting altered).

In her first issue, Mother contends that DHS failed to meet its burden of proof in establishing the elements set forth in the Adoption Act in order to terminate her parental rights to Child. *Id.* at 17. Specifically, Mother argues that "because she took the necessary steps to ensure the well-being of [Child], the elements of 23 Pa.C.S. § 2511(a) have not been proven by clear and convincing evidence." *Id.* at 19.

_____

*Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (noting that "there are clear reasons for applying an abuse of discretion standard of review in [dependency and termination of parental rights] cases" and acknowledging that "unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents" (citations omitted)); *see also In re S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) (emphasizing that "[w]hen a trial court makes a 'close call' in a fact-intensive case . . . the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court").

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted and formatting altered). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).  We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

## 23 Pa.C.S. § 2511(a)(2)

In the instant case, Mother contends that even though she admitted that she could not care for Child at the termination of parental rights hearing, her parental rights should not be terminated because she had the "fundamental right to direct the care, custody, and control of [Child.]"  Mother's Brief at 19 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).  Mother further argues that because she made arrangements for members of her family to care for Child, "she cannot be deemed to have abandoned or otherwise failed to act in [Child's] best interests."  *Id.*

Section 2511(a)(2) provides as follows:

**§ 2511.  Grounds for Involuntary Termination.**

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

> To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

> Further, this Court has explained:

> Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it[.]

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citations omitted and formatting altered).

Further, this Court has stated that a "child's need for consistent parental care and stability cannot be put aside or put on hold." *In re K.M.W.*, 238 A.3d 465, 474 (Pa. Super. 2020) (*en banc*) (citation omitted and some formatting altered).

> Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under

- 7 -

subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." ***In re A.L.D.***[, 797 A.2d 326, 340 (Pa. Super. 2002)]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***Id.***

***In re Z.P.***, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

Here, the trial court addressed Section 2511(a)(2) as follows:

The record reflects that [Child] was placed pursuant to an order of protective custody back in March of 2022. Single case plan objectives were established for reunification. They included ARC services, dual diagnosis and screens through the CEU unit as well as obtaining appropriate housing. Unfortunately, [Mother] has not complied with the single case plan objectives, nor made progress to alleviate the need for placement.

Visits were inconsistent and there were approximately three. There were times at which [Mother's] whereabouts became unknown during placement. . . .

The testimony also reflects that when visits do occur, [Child] does not interact with [Mother], but on the contrary[,] she avoids going near [Mother]. Addiction is very difficult, and [Mother] acknowledges that she's unable to care for [Child] at this time.

\* \* \*

[Child] does not look to [Mother] to meet her needs but looks to her [foster mother] to do that. [The trial court finds] that the conditions that necessitate placement will not be remedied in a reasonable amount of time. [Child] deserves permanency and [the trial court finds] that it is in her best interest for parental rights to be terminated and for the goal to be changed to adoption.

N.T., 8/7/24, at 40-42.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See T.S.M.*, 71 A.3d at 267; *K.M.W.*, 238 A.3d at 474. The record reflects that DHS presented testimony from Tracy O'Donnell, a Community Umbrella Agency case manager. N.T. Hr'g, 8/7/24, at 6. Ms. O'Donnell testified that Child was removed from Mother's care after Child tested positive for PCP and marijuana at birth and was placed with Child's maternal aunt. *Id.* at 9. Ms. O'Donnell further testified that that Mother made no progress in "alleviating the circumstances that brought [Child] into care." *Id.* at 17. Further, Ms. O'Donnell testified that in the twenty-eight months that Child had been in care, Mother participated in three visits. *Id.* at 20. During some of those visits, Mother would appear thirty to forty minutes late, or on some occasions not appear at all. *Id.* at 19. Prior to the August 7, 2024 termination of parental rights hearing, Mother's last visit with Child was on March 13, 2024. *Id.*

As this Court has stated, a "child's need for consistent parental care and stability cannot be put aside or put on hold." *K.M.W.*, 238 A.3d at 474 (citation omitted and some formatting altered). A court is not required to indefinitely postpone adoption to accommodate a parent's effort to straighten out her life. *See id.* For the reasons stated above, we discern no abuse of discretion by the trial court in concluding that termination was appropriate

under Section 2511(a)(2).[5]  ***See T.S.M.***, 71 A.3d at 267; ***K.M.W.***, 238 A.3d at 474.  Accordingly, Mother is not entitled to relief.

## 23 Pa.C.S. § 2511(b)

Next, Mother contends that her family members were "available to provide testimony to the [trial] court to shed light on [Child's] best interests, needs and welfare as regards [to] a pre-ado[p]tive placement, and that the [trial] court declined to hear all such evidence [and] leaves [this] Court to conclude that the trial court could not have adequately considered [Section] 2511(b)."  Mother's Brief at 20.

Section 2511(b) provides as follows:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has explained:

"While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is

---

[5] We reiterate that we need only agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights.  ***See B.L.W.***, 843 A.2d at 384.

> nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child."
> ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent[s].

***In re C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (some citations omitted and some formatting altered), *abrogated in part on other grounds by **In re K.T.***, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" ***K.T.***, 296 A.3d at 1106 (quoting ***T.S.M.***, 71 A.3d at 267). In ***K.T.***, our Supreme Court explained that "a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." ***Id.*** at 1113. Indeed, the parent-child bond analysis must include "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id.***

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, 71 A.3d at 268 (citation omitted). More specifically, courts must consider "the child's need for permanency and length of time in foster care . . . whether the child is in a

pre[-]adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." ***K.T.***, 296 A.3d at 1113 (footnote omitted and some formatting altered).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***T.S.M.***, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

In the instant case, the trial court addressed Section 2511(b) as follows:

[Child] is doing very well in her current home and interacts well with her foster brothers, and is starting to call the resource parent mom. This is the person who is currently meeting all of her needs.

[The trial court finds] that termination will not destroy an existing beneficial relationship in that there is no bond and there is no relationship. Since [Mother] has failed to follow through with her case plan objectives and barely visited her daughter[, t]ermination will not cause irreparable harm for similar reasons. [Child] is doing very well where she is currently placed.

N.T., 8/7/24, at 41-42 (some formatting altered).

In her brief, Appellant fails to elaborate upon what evidence the trial court improperly excluded and provides merely a bald accusation. ***See*** Mother's Brief at 20. Based on our review of the record, we discern no abuse of discretion by the trial court in concluding that termination of Mother's parental rights would best serve Child's needs and welfare. ***See K.T.***, 296 A.3d at 1113; ***T.S.M.***, 71 A.3d at 267-69. As noted, Ms. O'Donnell testified

that as of the time of the termination of parental rights hearing, Child had been in placement care for twenty-eight months. *See* N.T. Hr'g, 8/7/24, at 20. Child has bonded with her foster mother, as Ms. O'Donnell testified that Child seeks her foster mother to meet her needs. *Id.* at 24, 26. Ms. O'Donnell further testified that there is a "good bond" between Child and her foster mother. *Id.* at 26. She also testified that there is no bond between Child and Mother, and that termination of Mother's parental rights would not cause Child to suffer any irreparable harm. *Id.* at 24-25. On this record, we agree with the trial court's conclusion that the termination of Mother's parental rights would best serve Child's needs and welfare. *See* 23 Pa.C.S. § 2511(b); *K.T.*, 296 A.3d at 1113. Therefore, the trial court did not err in terminating Mother's parental rights. *See T.S.M.*, 71 A.3d at 267.

## Goal Change

Additionally, Mother argues that the trial court erred by changing Child's permanency goal from reunification to adoption. Mother's Brief at 21-25. Specifically, Mother contends the trial court abused its discretion because it failed to properly consider all potential kinship options available to Child. *Id.* at 24.

However, given our disposition concerning the termination of Mother's parental rights, we conclude that her appeal from the goal change order is moot. *See In re D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (concluding that a goal change challenge is moot when this Court affirms the decree terminating parental rights); *see also In re A.H.*, 247 A.3d 439, 446 (Pa.

Super. 2021) (stating that "the effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change [a c]hild's goal to adoption" (citation omitted)). In any event, to the extent Mother claims that the trial court failed to give primary consideration to Child's best interests, her claim is belied by the record for the reasons previously stated. Therefore, Mother is not entitled to relief on this claim.

For the foregoing reasons, we affirm the order changing Child's permanency goal to adoption and the decree terminating Mother's parental rights.

Order and decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2025